# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**ANTHONY HOLEK**

        **Plaintiff,**                    **No. 15-cv-11322-GER-DRG**

                                       **Hon. Gerald E. Rosen**

**vs.**

**AURORA COOPERATIVE
ELEVATOR COMPANY**
A Foreign Profit Corporation,

        **Defendant,**
_____/

## OPINION AND ORDER REGARDING CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on <u>June 7, 2016</u>

PRESENT: Honorable Gerald E. Rosen
               United States District Judge

## I.      INTRODUCTION

This diversity breach of contract action is presently before the Court on Cross-Motions for Summary Judgment filed by Plaintiff Anthony Holek and Defendant Aurora Cooperative Elevator Company.  At issue is a five-year fixed term employment contract the parties entered into on February 22, 2013.  Defendant Aurora terminated the contract on December 31, 2014.  Plaintiff now moves for summary judgment claiming that there is no genuine issue of material fact that he was terminated before the term of his contract

1

ended and, therefore, Defendant is liable for breach of the contract. Defendant responded by filing a cross-motion for summary judgment stating that it is undisputed that Plaintiff was terminated due to economic necessity which causes Plaintiff's breach of contract claim to fail as a matter of law.

Having reviewed and considered the parties' motions and briefs, and the entire record of this matter, the Court has concluded that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.   PERTINENT FACTS

Plaintiff Anthony Holek is a 44-year-old man who has spent his career working in agriculture and selling agricultural products to farmers. Defendant Aurora Cooperative Elevator Company ("Aurora") is a multi-purpose agricultural cooperative headquartered in Aurora, Nebraska, with 65 locations nation-wide and over 550 employees.

In December 2012, Clarence Vernon of Aurora contacted Plaintiff Holek and offered him employment as the Location Manager at Aurora's Lennon, Michigan facility, a position which entailed both managing the location and sales. [Plaintiff's Dep. pp. 11-14]. At the time, Holek was working as a salesman for Crop Production Services earning $45,000 per year, with the potential of an $8,000 bonus if annual sales quotas were met. *Id.* at 12. Holek was aware when Vernon offered him employment that Aurora's Lennon facility had had some financial difficulties, and Vernon specifically advised him that the Lennon facility would likely not be profitable at least during the first year of his employment. *Id.* at 16-17, 24. Nonetheless, after taking time to consider the matter,

2

Holek believed he could turn the business around and accepted the offer, agreeing to start work in February 2013. *Id.* at 13, 24.

On February 22, 2013, Holek entered into a five-year employment agreement with Aurora, commencing on that date, February 22, 2013, and continuing until February 22, 2018. [Aurora Cooperative Employment Agreement, p. 1]. The agreement provided Holek with a starting salary of $95,000 per year. *Id.*, p. 2. The agreement also contained the following provision regarding termination:

> This agreement maybe [sic] terminated as follows:
>
> 1. This agreement shall immediately terminate upon the event of the Employee's death.
>
> 2. The employer may terminate this Agreement at any time upon 24 hours prior notice "for cause." For purposes of this agreement generally, "cause" shall mean any act or omission which is commonly and materially harmful to the Employer and/or successful pursuit of its business interests.
>
> 3. If this agreement is terminated by the Employee without the consent of the Employer the Employee will be required to pay back all incentives paid to the employee before termination of the agreement.

*Id.* at 1.

Holek worked for Aurora at the Lennon, Michigan facility from February 22, 2013 until December 31, 2014. [Plaintiff's Dep. at 44.] During this time, the Lennon facility experienced multiple financial difficulties. In 2013, the facility sustained a loss of approximately $600,000.00, and in 2014, it sustained a loss of approximately $300,000.00. *Id.* at 18-19.

The financial losses notwithstanding, Holek personally did well while working for Aurora: He was rated number one in sales for national accounts in 2013, and number two

in 2014. *Id.* at 23.  Holek testified that he worked approximately 50 hours per week during the down seasons and as many as 80-100 hours per week during the busy season. *Id.* at 22.  He received a positive employee review during this time, as well. [Aurora Cooperative Elevator Company Performance Appraisal - Supervisory, p. 1].

However, on October 31, 2014, Clarence Vernon informed Holek that Aurora's Lennon, Michigan facility would be closing.  [Plaintiff's Dep. at 25].  Aurora offered Holek multiple positions at its other facilities in Iowa, South Dakota, Nebraska and Texas, but Holek turned the positions down because he wanted to remain in Michigan near to his family.  *Id.* at 28-29.[1]  He continued to work for Aurora until December 2014. *Id.* at 45.

Holek started to seek other employment as soon as he decided not to take another position with Aurora.  *Id.* at 30.  After exploring multiple options and receiving multiple offers, Mr. Holek accepted a sales position with Wilbur-Ellis Company.  *Id.* at 34.  He started work with Wilbur-Ellis on January 1, 2015 for a yearly salary of $55,000, with the potential for an annual bonus of $5,000. *Id.* at 33-34. [Wilbur-Ellis Employment Agreement, p. 1].

On March 4, 2015, Holek filed a one-count breach of contract Complaint against Aurora in Shiawassee County Circuit Court, claiming that Aurora wrongfully discharged him when it terminated his contract before the end of his contractual five-year term. Aurora timely removed the action to this Court on diversity of citizenship grounds on

---

[1]  Holek is divorced and has joint custody with his ex-wife of their four teenage daughters.  [Plaintiff's Dep., p. 7].

4

April 9, 2015. Discovery has now closed and the parties both move for summary judgment.

The parties do not dispute that Aurora closed its Lennon, Michigan facility due to an economic necessity. However, the parties disagree as to what effect this has on the contract. Aurora claims that Holek cannot maintain a breach of contract claim because it is undisputed that the actions of Aurora were motivated by economic necessity. Holek argues that economic necessity was not within the definition of "cause" set forth in the contract and, therefore, Aurora breached the contract by terminating him for economic reasons.

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56 [] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 252 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials,

5

but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted). The Court will apply the foregoing standards in deciding the Defendant's motion for summary judgment in this case.

B.     PLAINTIFF HAS FAILED TO STATE A COGNIZABLE BREACH OF
       CONTRACT CLAIM

It is well-settled under Michigan law that fixed-term employment agreements are enforceable.  *See e.g., Webb v. Depew,* 152 Mich. 698, 116 N.W. 560 (1908); *Reinardy v. Bruzzese,* 368 Mich. 688, 118 N.W. 952 (1962).  In *Webb*, the defendant hired the plaintiff and her daughter to work in his home for a minimum period of 3 ½ months.  152 Mich. at 699.  He fired them ten days after hiring them.  *Id.*  The Michigan Supreme Court held that the plaintiff was allowed to recover damages for the full term of the contract because she was wrongfully discharged before the expiration of the term.  *Id.* at 701-02.

However, the premature termination of a fixed-term employment contract does not automatically give rise to a cause of action.  *Bhogaonker v. Metropolitan Hospital,* 164. Mich. App. 563, 565, 417 N.W. 2d 501 (1987) (*abrogated on other grounds)*; *Reisman v.*

6

*Regents of Wayne State University,* 188 Mich. App. 526, 531, 470 N.W. 2d 678 (1991).

The discharged employee must show at least some evidence that the termination was

wrongful and constituted a breach of contract in order to withstand summary judgment.

*Pachala v. Saunders Systems,* 899 F.2d 496, 500 (6th Cir. 1990) (applying Michigan

law).

Economic necessity is a well-established defense to a claim of wrongful

termination. *Featherly v. Teledyne Industries, Inc.,* 194 Mich. App. 352, 360, 486

N.W.2d 361 (1992).  Where there is no evidence of pretext, there is no cause of action

when an employment contact is terminated for economic necessity.  *Bhogaonker,* 164

Mich. App. at 565; *Featherly* 194 Mich. App. at 364-65; *Friske v. Jasinski Builders,*

*Inc.*, 156 Mich. App. 468, 472, 402 N.W.2d 42 (1986)

In *Featherly,* three supervisory Teledyne employees brought suit after their

employment was terminated.  One of the plaintiffs sued for breach of contract alleging

that oral representations made by the company president gave rise to an implied contract

terminable only for just cause. 194 Mich. App. at 364-365. The court allowed plaintiff the

benefit of the doubt as to the existence of an oral contract, but held that even if a contract

did exist, "[b]ecause it was undisputed that plaintiff's employer imposed economically

mandated reductions in force, plaintiff failed, as a matter of law, to present facts alleging

a breach of contract claim under *Toussaint." Id.*

A similar result was reached in *Bhogoanker v. Metropolitan Hospital, supra.* The

plaintiff in *Bhogoanker* was a doctor who was told by the hospital that he would have

employment as long as his work was satisfactory. *Bhogoanker,* 164 Mich. App. at 565.

7

Seven years later, plaintiff was terminated due to a reduction in staff that had resulted

from budget cuts. *Id.* at 566. Plaintiff filed suit alleging that the defendant breached the

contract by firing him for a reason other than unsatisfactory performance. *Id.* The trial

court granted summary disposition in favor of the defendant on the grounds that the court

lacked subject matter jurisdiction. *Id.* The Court of Appeals held that even though the

trial court was incorrect when it stated it did not have subject matter jurisdiction,

summary disposition was nonetheless proper because there was no genuine issue as to a

material fact that the plaintiff was terminated due to an economic necessity. *Id.* at 566.

The appellate court explained:

> Case law indicates that termination of the employment of an otherwise competent
> employee due to an economically motivated business closing is not grounds for a
> wrongful discharge claim . . . To hold otherwise would impose an unworkable
> economic burden upon employers to stay in business to the point of bankruptcy in
> order to satisfy employment contracts and related agreements terminable only for
> good or sufficient cause.

*Id.* at 565-566 (internal citations omitted). S*ee also McCart v. J. Walter Thompson USA,*

*Inc.*, 437 Mich. 109, 115, 469 N.W.2d 284 (1991) (where plaintiff failed to raise any

genuine issue of fact regarding the validity of defendant's proofs that adverse business

conditions existed and that the elimination of plaintiff's position was necessitated by

those conditions summary disposition was proper); *Conklin v. Eastern Mich. Univ.*

*Chapter of American Ass'n of University Professors*, 2008 WL 4648796 at *5 (Mich.

App. Oct. 21, 2008) (where the defendant's evidence established that plaintiff's

termination was economically necessary, and plaintiff failed to rebut that evidence with

evidence showing that the asserted economic necessity was pretextual and that she was

actually discharged for another reason , the trial court properly granted defendant's motion for summary disposition).

The result is the same when an employee with a fixed-term contract is terminated for reasons such as budget cuts or economic necessity:  there is no wrongful termination and, therefore, no cause of action.  *Reisman,* 188 Mich. App. at 531. This applies even when the contract states the employee can only be terminated for cause. *Id.* "Termination because of economic hardship constitutes termination for cause under Michigan law." *Olson v. Kennametal, Inc.*, 894 F.2d 1336, 1990 WL 7943 at *2 (6th Cir. 1990) (applying Michigan  law). *See also Parker v. City of Flint*, 2008 WL 2780090 (Mich. App. July 17, 2008).

In *Parker* the plaintiff argued that he was wrongfully discharged because, based on his written employment contract with defendant, he could only be discharged for specific violations of the contract or on receiving 30 days notice before the expiration of the contract term. The trial court refused to allow the defense of economic necessity.  The Court of Appeals agreed with the defendant that economic necessity always constitutes a valid basis for employment termination and concluded that the trial court erred in precluding the defense.  2008 WL 2780090. at *4.  The appellate court reasoned:

> Defendant's position is consistent with our Supreme Court's ruling in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579; 292 N.W.2d 880 (1980) and its progeny, which provide "that an employee may have an enforceable right not to be terminated except for just cause grounded in either an express oral or written contract or in legitimate expectations arising from an employer's policy statements.  However, it is recognized that under *Toussaint*, bona fide economic reasons for discharge constitute "just cause."

Plaintiff is correct in asserting that the written contract executed between the parties is subject to enforcement consistent with its terms and defendant's agreement to restrict its discretion to terminate his employment. However, while relying on this premise as set forth in this Court's ruling in *Thomas v. John Deere Corp.*, 205 Mich. App. 91, 93; 517 N.W.2d 265 (1994), plaintiff fails to recognize the limitations of that decision. In *Thomas*, while this Court acknowledged the rules pertaining to employment contracts and their interpretations, a limitation was noted. Specifically,

If an employment contract provides that the employer can terminate the employment only for just cause, then that provision is enforceable and the employer cannot terminate employment at will.

*Thomas, supra* at 93.

Contrary to plaintiff's interpretation, termination of a just cause employment contract does not preclude the defense of economic necessity, rather it merely assures that any termination is consistent with the just cause nature of the contract and prohibits the employer from discharging an employee "at will."

2008 WL 2780090 at *4-5 (internal citations omitted).

In this case, Defendant Aurora relies on the economic necessity defense. Plaintiff does not dispute the legitimacy of that defense. He does not dispute that Aurora closed its Lennon, Michigan facility for economic reasons. Indeed, as Plaintiff himself acknowledged, in just the two years prior to closing, the Lennon facility sustained losses of close to $1,000,000. [Plaintiff's Dep., pp. 13-14].

The only way Plaintiff could withstand summary judgment would be to present evidence that calls into question the legitimacy of the economic necessity defense. *Conklin,* 2008 WL 4648796 at 2. Holek has not met this burden. In fact, Holek presents absolutely no evidence of any other reason for his termination.

10

There being no dispute that Aurora terminated Holek's employment due to economic necessity, applying Michigan law, the Court concludes that Plaintiff's breach of contract complaint fails as a matter of law.

## **CONCLUSION**

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Dkt. # 17]** is GRANTED and Plaintiff's  Motion for Summary Judgment **[Dkt. # 14]** is DENIED.  accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.


s/Gerald E. Rosen
Hon. Gerald E. Rosen
United States District Judge


Date: June 7, 2016


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 7, 2016, by electronic and/or ordinary mail.

s/Kelly Winslow for Julie Owens
Case Manager, (313) 234-5135